IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KATE MCKINLEY | : | Civil Action |
| Plaintiff | : | |
| v. | : | No. 3:22-cv-5069-MAS-TJB |
| | : | |
| PRINCETON UNIVERSITY | : | |
| | : | |
| Defendants | : | |

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT,
THE TRUSTEES OF PRINCETON UNIVERSITY,
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, The Trustees of Princeton University ("University" or "Princeton") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Despite Plaintiff's amendments to her Complaint, the Complaint still fails as a matter of law and should be dismissed, this time with prejudice.

I.   **INTRODUCTION**

This case is about a former employee of Princeton, who refused to comply with Princeton's straightforward, public-health informed, and uniformly-applied COVID-19 safety requirements based on a purported religious belief.  Princeton handled this matter by the book – in accordance with CDC guidelines, New Jersey COVID-19 regulations, University policies and legal requirements.

Princeton's COVID-19 mitigation requirements, which followed the Centers for Disease Control and Prevention ("CDC") and New Jersey Department of Health's guidelines, were enacted to ensure the safety of all students, faculty, and staff. Princeton exempted Plaintiff, Kate McKinley, from its COVID-19 vaccination

requirement after Princeton engaged with her in an interactive process following her request for a religious exemption. With this exemption, Plaintiff was able to come to work and perform her job duties without having a COVID-19 vaccination, provided that Plaintiff complied with three measures (the same as all other unvaccinated employees): (1) wear a mask in the workplace, (2) participate in Princeton's COVID-19 testing program, and (3) participate in Princeton's contact tracing program.  Plaintiff then sought to be exempted from these three measures as well, again citing her purported religious belief.  This time, Plaintiff failed to assert a religious basis for seeking exemptions from these three measures, instead submitting generalized medical objections, including that healthy people should not have to wear masks.  Plaintiff was informed mutiple times that failure to adhere to Princeton's COVID-19 policy would result in her separation from the University. Yet after five (5) weeks of engagement with Princeton on this issue, Plaintiff refused to comply.  As a result, her employment was terminated.  Plaintiff now brings this fatally-flawed action.

Plaintiff's Amended Complaint should be dismissed because Plaintiff's amendments fail to salvage the threadbare allegations that this Court has already rejected as inadequate to state a claim for discrimination or retaliation on the basis of religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"). Plaintiff still fails to allege a sincere religious belief that conflicts with Princeton's policy, and accordingly, Plaintiff's claims under Title VII and NJLAD should be dismissed with prejudice.

II.     **FACTS**

Plaintiff filed this lawsuit on August 16, 2022, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act based on religion; discrimination and unlawful retaliation in violation of NJLAD; and violations of provisions of the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff et seq. ("GINA").  (See Complaint ("Compl.") (Docket No. 1).)  On September 20, 2022, Princeton filed a Motion to Dismiss Plaintiff's Complaint in its entirety for failure to satisfy federal pleading standards because Plaintiff did not specify the basis for her religious request to be exempted from Princeton's COVID-19 mitigation policies. (See Motion to Dismiss Complaint (Docket No. 3.))  Princeton further sought dismissal of Plaintiff's GINA claim because Plaintiff's termination was done so in connection with her failure to comply with Princeton's COVID-19 mitigation policies, and not due to her genetic make-up. (Id.)

On April 28, 2023, this Honorable Court granted Princeton's Motion to Dismiss, without prejudice, and issued a Memorandum and Opinion. (See Court's Memorandum and Opinion (Docket No. 9).)  This Court held that Plaintiff failed to adequately allege a cognizable claim for religious discrimination and retaliation because she did not "provide facts showing what sincerely held religious belief she holds that prevented her from complying with the COVID-19 policies." (Id. at pp. 4-6.)  This Court further Ordered that Plaintiff could file an amended complaint consistent with the Court's Memorandum and Opinion within thirty (30) days of the Court's Order. (See Court Order (Docket No. 10).)

On May 25, 2023, Plaintiff filed her Amended Complaint adding a few vague (and incomplete) allegations about her personal preferences to support her religious

3

discrimination and retaliation claims.[1] (See Amended Complaint ("Am. Compl.") (Docket No. 11).)  Plaintiff, who was granted a religious exemption from Princeton's COVID-19 vaccination requirement, alleges that she requested an accommodation to be exempt from Princeton's COVID-19 policies related to asymptomatic testing, mask requirements, and contact tracing due to her religious beliefs. (See Am. Compl. at ¶¶ 15-16.)  Plaintiff further alleges that she objected to Princeton's COVID-19 policies "due to [her] religious beliefs." (Id. at ¶ 18.) Plaintiff now adds the new allegation that she: "holds a sincere religious belief that her body is a temple, she decries and does all that she can to abolish any and all abuse against life and Mankind, and decries the suppression of knowledge, wisdom, philosophy, or data which would help Mankind." (Id. at ¶ 12.) Plaintiff asserts she articulated her religious beliefs to her employer in an August 18, 2021 email wherein she sought to be exempted from the University's COVID-19 mitigation policies. (Id. at ¶ 16; see also August 18, 2019 Email, attached hereto as Exhibit A.)[2]  However, Plaintiff has omitted from her Amended Complaint the

---

[1] Plaintiff has abandoned her dismissed GINA claim, recognizing that she could not assert facts sufficient to plead such a claim under GINA. Therefore, Princeton will not address this claim in this instant Motion to Dismiss.

[2] Although Plaintiff did not attach her August 18, 2021 correspondence to the University's HR department, this Court may consider that communication without converting the instant Motion to Dismiss into a motion for summary judgment because Plaintiff expressly referenced and explicitly relied upon this communication in support of her claim that she articulated to her employer her basis for receiving a religious exemption to the University's COVID-19 mitigation policies. (Am. Comp. ¶ 16.) See also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (on a 12(b)(6) motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  Courts in this Circuit have relied on such correspondence attached as exhibits to parties' briefing at the motion to dismiss stage in similar COVID-19 and flu vaccine religious accommodation cases. See, e.g., Fallon v. Mercy Catholic Med. Ctr., 877 F.3d 487, 493 (3d Cir. 2017) (considering the entirety of

full extent of her request for a religious exemption, which is based upon objections to the medical necessity, safety, and efficacy of the University's mitigation policies. (Id.) For example, Plaintiff asserted that: 1) masking causes "A significant risk of bacterial infection in the mouth, nose, throat, and lungs," 2) "no studies show the efficacy of facemasks on preventing viral transmission," and 3) "FDA-authorized (and unapproved) diagnostic panels that can differentiate between influenza and coronavirus" may result in her being viewed as having coronavirus even if she only has influenza," and "being tagged and traced like an animal by an unapproved test for a virus that [she] show[s] no symptoms of having." (Id.)

Plaintiff further claims that she was "terminated by Defendant," but she fails to allege any facts stating why her employment at Princeton ended, or that the termination of her employment was in any way retaliatory for holding a sincerely-held religious belief. (See Am. Compl. at ¶ 26.) Rather, Plaintiff's employment was terminated due to her refusal to comply with the University's COVID-19 mitigation requirements in accordance with the University's Communicable Disease Policy, and for no other reason.

## III.   ARGUMENT

### A.   Plaintiff's Amended Complaint Fails to Satisfy Federal Pleading Standards.

A complaint should be dismissed where it fails to state a claim upon which relief can be granted. Fed.R.C.P. 12(b)(6). To survive a motion to dismiss, a plaintiff must

---

an essay written by plaintiff because the complaint "quoted portions of this essay" and "explicitly relied on it"); Ulrich v. Lancaster Gen. Health, Civil Action No. 22-4945, 2023 U.S. Dist. LEXIS 64750, *2–6 (E.D. Pa. Apr. 13, 2023) (considering plaintiff's accommodations request attached as an exhibit to defendant's motion to dismiss).

plead factual allegations that, taken as true, form a plausible basis for recovery on the claim in question.  Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  In Twombly, the Supreme Court emphasized:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of his entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Twombly, 550 U.S. at 555, quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (other citations omitted).  The Third Circuit, interpreting Twombly, instructed courts considering a motion to dismiss under Rule 12(b)(6) to accept the factual allegations of the complaint as true; to draw inferences in favor of the plaintiff insofar as such inferences are reasonable; and to determine whether the plaintiff is entitled to relief under a reasonable reading of the complaint's factual allegations.  Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008), citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002); In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 215-16 (3d Cir. 2002).

It is insufficient for a complaint to set forth a conclusory recitation of the elements of a cause of action. Umland v. Planco Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008), citing Phillips, 515 F.3d at 233.  Courts are not to credit "bald assertions" or "a legal conclusion couched as a factual allegation." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Papasan, 478 U.S. at 286.  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 570. "Conclusory allegations are insufficient to

6

survive a motion to dismiss." Rios v. City of Bayonne, 2015 U.S. Dist. LEXIS 65423, *6 (D.N.J May 19, 2015) (citing Bangura v. City of Philadelphia, 338 F.App'x 261, 265066 (3d Cir. 2009)). The Court need not accept as true "unsupported conclusions and unwarranted inferences" or legal conclusions. Id.; See also Twombly, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

> i. **Plaintiff's Claims that Princeton Discriminated and Retaliated Against Her in Violation of Title VII Must Be Dismissed.**

In Counts I and II, Plaintiff alleges that the University discriminated and retaliated against her on the basis of religion in violation of Title VII, but still fails to offer sufficient facts to support her claims because her request for an accommodation was based upon medical, not religious reasons.

> 1. **Plaintiff fails to plead a claim for religious discrimination.**

To establish a prima facie case of religious discrimination under Title VII, a plaintiff must show that (1) she held a sincere religious belief that conflicted with a job requirement, (2) she informed her employer of the conflict, and (3) she was disciplined for failing to comply with the conflicting requirement. Fallon v. Mercy Catholic Med. Ctr., 877 F.3d at 490. Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . .." Id. (citing Title VII, 42 U.S.C. §§ 2000e et seq.) According to the statutory definitions, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that it is

7

unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id.

In Fallon, the plaintiff claimed that he held a sincere opposition to vaccination that conflicted with the requirement that he receive the flu vaccine. 877 F.3d at 490. The plaintiff informed his employer of the conflict, and his employment was terminated for failing to comply with the vaccination requirement. Id. The Third Circuit affirmed the District Court's dismissal of the plaintiff's claims finding that the plaintiff's alleged religious beliefs failed to address "fundamental and ultimate questions having to do with deep and imponderable matters," were not "comprehensive in nature," and that plaintiff's concerns were medical and not religious in nature. Id. at 488. The court further stated that "[plaintiff] simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine." The court further stated that the plaintiff's "views" are not manifested in formal and external signs associated with the traditional religions and do not occupy a place in his life similar to that occupied by a more traditional faith. Id. The court concluded that the plaintiff's "objection to vaccination is therefore not religious and not protected by Title VII." Id.; see also Brown v. Children's Hosp. of Philadelphia, 794 F. App'x 226, 227 (3d Cir. 2020) (finding that plaintiff's "concern that flu vaccine may do more harm than good" is a medical belief and not religious in nature.)

In Fallon, the plaintiff articulated his religious beliefs in the complaint, and the court still found those allegations to be insufficient to advance a claim for religious discrimination. Similar to Fallon, Plaintiff's purported religious belief here is in reality

based upon medical and not religious concerns. The purported religious belief Plaintiff alleges in the Amended Complaint is inarticulable – she exclaims that "her body is a temple," she "decries…all abuse against life and Mankind," and she "decries the suppression of knowledge, wisdom, philosophy or data which would help Mankind." (Am. Compl. at ¶ 12.)  These vague positions are not comprehensive in nature, bear none of the indicia associated with traditional religions, and are not at odds with Princeton's COVID-19 policies.  Plaintiffs' claims fail for this reason alone. However, Plaintiff's August 18, 2021 email to Princeton's HR Department, on which she relies, revealed that her objection to masking was actually based upon her belief that masking placed her at risk for infection in her mouth, nose, throat, and lungs. (See Exhibit A.) Plaintiff also opposed the University's testing protocols because she questioned the efficacy of FDA-authorized tests, and that she would somehow be tagged and traced like an animal. (Id.) Not only do these stated bases fail to meet the standard for pleading a sincerely held religious belief, but when it comes to testing the EEOC has made clear that employers can mandate and administer COVID-19 testing periodically to determine if employees' presence in the workplace poses a direct threat to others.[3]

---

[3] See EEOC's Guidance, What You Should Know About COVID0-19 and the ADA, the Rehabilitation Act, and Other EEDO Laws, available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws; see Section A.6 Q: May an employer administer a COVID-19 test (a test to detect the presence of the COVID-19 virus) when evaluating an employee's initial or continued presence in the workplace? A: The ADA requires that any mandatory medical test of employees be "job related and consistent with business necessity." Applying this standard to the current circumstances of the COVID-19 pandemic, **employers may take screening steps to determine if employees entering the workplace have COVID-19** because an individual with the virus will pose a direct threat to the health of others. Therefore, **an employer may choose to administer COVID-19 testing to employees** before initially permitting them to enter

While this Court has not yet addressed the specific issue on point in this case, several other District Courts within the Third Circuit have recently addressed this issue head-on under the rubric of Fallon and its progeny. In Ulrich v. Lancaster Gen. Health, plaintiff sought a religious exemption to COVID vaccination, but was informed by her employer that she would have to undergo mandatory COVID testing. Civil Action No. 22-4945, 2023 U.S.Dist. LEXIS 64750, *2 (E.D.Pa. Apr. 13, 2023). As here, the plaintiff stated in her request for a religious exemption that her body is her temple, and frequent invasive testing in the absence of any redeeming medical benefit would be "unfitting when [she] is to treat [her] body as a temple of the Holy Spirit." Id. at *3-4. Unlike here, the plaintiff also cited to a Bible passage in support of her request. Id. The court nevertheless dismissed the plaintiff's claim, stating that her objections to COVID testing were not religious under Title VII. Id. at *11; citing Fallon, 877 F.3d 490.

Similarly, in Finkbeiner v. Geisinger Clinic, the Middle District of Pennsylvania dismissed a putative class action claim for religious discrimination because the plaintiff's request to be exempted from COVID testing stemmed from her medical beliefs, and were not religious in nature. Civil Action No. 4:21-CV-01903, 2022 U.S. Dist. LEXIS 154512, *10 (M.D. Pa. Aug. 26, 2022). The plaintiff alleged that she had a "God given right to make [her] own choices," which obviated her employer's requirement that she be COVID tested. Id. The court stated that allowing such an exemption would amount to a blanket privilege, and further that this belief is an isolated moral teaching – not a

---

the workplace **and/or periodically to determine if their presence in the workplace poses a direct threat to others**." (emphasis added)

10

comprehensive system of beliefs about fundamental or ultimate matters. Id.; Fallon, 877 F.3d at 492.

Also, in Blackwell v. Lehigh Valley Health Network, the plaintiff requested a religious exemption to COVID testing because as a member of the United Church of Christ, her "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body." Civil Action No. 5:22-CV-03360, 2023 U.S.Dist. LEXIS 10747, *23 (E.D.Pa. Jan. 23, 2023).  The court dismissed the plaintiff's religious discrimination claim because her request challenged her employer's factual and scientific basis for employing testing protocols. Id.  The court further stated that the plaintiff's beliefs do not "address fundamental and ultimate questions having to do with deep and imponderable matters." Id.; citing Brown, 794 Fed. Appx. At 227 (quoting Fallon, 877 F.3d at 490).

In this case, Plaintiff's pleading falls woefully short of the Fallon Court's requirement that a plaintiff must explain how their purported beliefs conflicting with an employer's policies are religious in nature. Plaintiff here, just as the plaintiffs in the above-cited District Court cases, pleads only general statements that her body is her temple. Indeed, Plaintiff's stated basis for a religious exemption is not religious in nature, but instead an objection to the medical necessity and efficacy of masking and COVID-19 testing. Accordingly, Plaintiff's claim for religious discrimination under Title VII in Count I of the Amended Complaint must be dismissed.

### 2. Plaintiff fails to plead a claim for retaliation.

Plaintiff's Amended Complaint should also be dismissed because she fails to plead adequate facts to state a claim of retaliation in violation of Title VII. To establish a claim for retaliation under Title VII, Plaintiff must allege that "(1) [s]he was engaged in

protected activity; (2) [s]he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." Silver v. AICPA, Civil Action No. 01-4910 (JWB), 2005 U.S. Dist. LEXIS 18108, at *15 (D.N.J. Aug. 15, 2005) (citing Sarullo v. U.S. Postal Service, 352 F.3d 789, 800 (3d Cir. 2003).)

In this case, Plaintiff has failed to establish a prima facie case of retaliation under Title VII. Plaintiff was informed that compliance with Princeton's COVID-19 safety protocols was a condition for continued employment at Princeton. (Am. Compl. ¶¶ 14-16.) Plaintiff understood that failure to comply with these protocols would result in the termination of her employment. Plaintiff still maintained that she would not wear a mask or participate in testing. As a result, Plaintiff's employment was terminated.

Plaintiff's Amended Complaint does not state any facts to demonstrate a causal connection between Plaintiff's alleged religious beliefs and Princeton's decision to end her employment. Plaintiff further fails to plead facts to support a retaliatory motive. Princeton's termination of Plaintiff's employment was only due to Plaintiff's failure to comply with the University's COVID-19 mitigation requirements in accordance with its policies.

Accordingly, Plaintiff's claim for retaliation under Title VII in Count II of the Amended Complaint must be dismissed.

      **ii.    Plaintiff's Claims that Princeton Discriminated and Retaliated Against Her in Violation of NJLAD Must Be Dismissed.**

Plaintiff alleges that Princeton discriminated and retaliated against her in violation of NJLAD, but for the reasons stated above in sections A.i.1. and A.i.2, she still fails to plead sufficient facts to support claims for religious discrimination and retaliation. As

this Court correctly stated in its April 28, 2023 Memorandum and Opinion, Title VII and NJLAD claims are the same and should be analyzed together. (See Memorandum and Opinion, at pp. 3-4.) Plaintiff's claims for discrimination and retaliation under NJLAD fail for the same reasons as her Title VII claims – she fails to allege any facts to support the claim that Princeton refused to accommodate sincerely-held religious beliefs or that Princeton took any adverse action against her due to those beliefs. Accordingly, Plaintiff's claims for discrimination and retaliation under NJLAD in Counts III and IV must be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Princeton respectfully requests that the Court dismiss with prejudice all claims in the Amended Complaint against it for failure to state a claim upon which relief may be granted.

Respectfully submitted,

TUCKER LAW GROUP, LLC

Dated: June 8, 2023

/s/ Dimitrios Mavroudis
Leslie Miller Greenspan, Esquire
Dimitrios Mavroudis, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
*Attorneys for Defendant,*
*The Trustees of Princeton University*